UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMEDE IRIZARRY,

                              Petitioner,

        - against -

ROBERT ERCOLE, Superintendent, Green Haven
Correctional Facility,

                              Respondent(s).

08 Civ. 5884 (KMK) (PED)

REPORT AND
RECOMMENDATION

TO:    THE HONORABLE KENNETH M. KARAS,
       UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Amede Irizarry ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254, from his February 3, 2005 conviction entered in Westchester

County Court (Molea, J.). Petitioner was convicted, after a trial by jury, of one count of murder

in the first degree and sentenced, *inter alia*, to life imprisonment without parole. This petition

comes before me pursuant to an Order of Reference dated October 24, 2008, (Docket No. 2),

which was subsequently reassigned to me on January 12, 2009, (Docket No. 10). For the reasons

set forth below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND

A.     **The Crime and Police Investigation**

        The facts related to the underlying criminal offense may be briefly summarized. On

February 21, 2004, Ignacio Meneses ("Meneses") was stripped naked, robbed of his jewelry,

mobile phone, and the contents of his wallet, and beaten to death in a wooded area between

McLean Avenue and the Saw Mill Parkway in Yonkers, New York. Family reported to police

the next day that Meneses was missing, and his body was thereafter discovered in that wooded

area, at the bottom of a hill, on February 29, 2004. An autopsy revealed that the cause of death had been blunt force trauma to the head and the testifying medical examiner opined that Meneses had received other injuries inconsistent with a fall.

On March 1, 2004, police drove with a witness who had been with Meneses prior to his death to determine if she recognized any of Meneses's other acquaintances in the area. During this drive, she identified Petitioner, whom she spotted on the sidewalk, as a friend of Meneses. Police thereafter approached Petitioner on the sidewalk and asked him if he would come with them to the station for questioning.[1] Petitioner agreed. Petitioner was patted down, taken unrestrained to the police station, and asked to wait to be interviewed until police finished questioning others. Petitioner agreed, and was asked if he wanted water, cigarettes, and bathroom breaks while he waited approximately four hours in an unlocked room for the interview to commence. Petitioner later waived his Miranda[2] rights and provided police with oral, written, and videotaped statements in which he admitted that he had been with Meneses when Meneses had died, but stated that Meneses had died as a result of falling down a hill.[3] After Petitioner provided these statements, he was formally arrested, then later indicted and arraigned on one count of murder in the first degree and three counts of murder in the second degree.

---

[1] Police also asked Petitioner if his nickname was "Pito," the name that the witness had used when she identified him on the sidewalk, and he confirmed that it was. (See Aff. in Opp'n to Pet. for a Writ of Habeas Corpus (hereinafter "Resp't Aff."), at 3 (Docket No. 15)).

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

[3] Police investigation also later revealed that Petitioner had told other individuals, after the homicide, differing accounts about how Meneses had died, and had displayed to them a cell phone that had belonged to Meneses. (See Resp't Aff., at 4-5).

2

**B.   Pretrial Hearings**

Through counsel, Petitioner moved by pretrial omnibus motion to, among other things, suppress the statements he had given to police on the grounds that they had been products of a warrentless arrest effectuated without probable cause, as well as a custodial interrogation in violation of <u>Miranda</u>.  (Notice of Mot. (attached to Resp't Mem. of Law & Exs. (hereinafter "Resp't Mem."), at Ex. A) (Docket No. 16)).[4]  The court ordered a pretrial hearing to determine whether <u>Miranda</u> warnings had been necessary and/or had been given, whether Petitioner had knowingly and voluntarily waived such <u>Miranda</u> warnings, and whether his statements had been made voluntarily.  (Nov. 10, 2004 Decision & Order (Ex. C)).  The court, however, declined to hold a hearing to address the legality of any arrest on the ground that Petitioner had failed to accompany his motion with a sworn statement of facts as required by New York law.[5]  (<u>Id.</u> at 2-3).  After the hearing, the court determined that: (1) Petitioner was not in custody at the time he was questioned by police on the sidewalk, and therefore was not entitled to <u>Miranda</u> warnings at that time; (2) Petitioner voluntarily agreed to accompany police to the station; (3) Petitioner was given <u>Miranda</u> warnings at the police station before making any incriminating statements; (4) Petitioner knowingly and voluntarily waived his <u>Miranda</u> rights prior to making those statements; and (5) Petitioner's statements were made voluntarily.  (<u>See</u> Nov. 19, 2004 Hr'g Tr., at 89-108 (Docket No. 18)).  Petitioner's motion to suppress was subsequently denied.  (<u>Id.</u> at

---

[4] All exhibits cited herein are attached to Resp't Mem. (Docket No. 16).

[5] "A motion to suppress evidence made before trial . . . must state the ground or grounds of the motion and must contain sworn allegations of fact, whether of the defendant or of another person or persons, supporting such grounds. . . ."  N.Y. Crim. Proc. Law § 710.60(1).  "The court may summarily deny the motion if . . . [t]he sworn allegations of fact do not as a matter of law support the ground alleged . . . ."  <u>Id.</u> § 710.60(3)(b).

108).

## C.    **Trial and Sentencing**

At trial, defense counsel moved to dismiss all of the charges, and the court granted that motion with respect to the count of murder in the second degree (depraved indifference murder) and denied the motion with respect to the other charges.  On December 6, 2004, the jury returned a verdict of guilty on the charge of murder in the first degree,[6] and on February 3, 2005, Petitioner was sentenced to a term of life imprisonment without parole.

## D.    **Direct Appeal**

Petitioner, through his appellate counsel,[7] appealed his conviction to the New York State Appellate Division, Second Department, on the following grounds:

(1)    the hearing court erred in determining that Petitioner was not in custody at the time he was stopped on the sidewalk;

(2)    Petitioner was arrested without probable cause;

(3)    the hearing court erred in determining that Petitioner's statements were not the fruit of an unlawful arrest;

(4)    the hearing court erred in determining that Petitioner's statements were voluntarily made;

---

[6]

A person is guilty of murder in the first degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . . the victim was killed while the defendant was in the course of committing or attempting to commit and in furtherance of robbery, burglary in the first degree or second degree, kidnapping in the first degree, arson in the first degree or second degree, rape in the first degree, criminal sexual act in the first degree, sexual abuse in the first degree, aggravated sexual abuse in the first degree or escape in the first degree, or in the course of and furtherance of immediate flight after committing or attempting to commit any such crime or in the course of and furtherance of immediate flight after attempting to commit the crime of murder in the second degree . . . .

N.Y. Penal Law § 125.27(1)(a)(vii).

[7] Petitioner was represented by different counsel on appeal.

(5)     the hearing court deprived Petitioner of his constitutional rights by preventing him from cross-examining the State's witnesses; and

(6)     ineffective assistance of counsel.

(See Br. for Def.-Appellant (Ex. D)).  The Second Department affirmed the judgment in a written decision on February 6, 2007.  People v. Irizarry, 827 N.Y.S.2d 883 (App. Div. 2007). Petitioner then sought leave to appeal to the New York State Court of Appeals, and leave was denied on May 25, 2007.  People v. Irizarry, 8 N.Y.3d 986 (2007).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court, nor has he sought state collateral relief.  (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (hereinafter "Pet."), at 2-3 (unpaginated) (Docket No. 1)).

E.      *Habeas Corpus* **Proceedings**

By petition dated June 3, 2008, Petitioner filed for a writ of *habeas corpus*, asserting each ground raised on direct appeal.[8]  (See Pet.)[9]

### III. DISCUSSION

A.      **Applicable Law**

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28

---

[8] The petition was timely filed.  See 28 U.S.C. § 2244(d)(1)-(2).

[9] Petitioner attached a copy of the table of contents from his appellate brief to his *habeas* petition.  (See Pet.; Br. for Def.-Appellant).  Respondent initially moved to dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Petitioner failed to write, in the space provided on page 4 of the pre-printed petition form, each of the claims he raised.  (Docket No. 6).  The motion was denied.  (Docket No. 14).

U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d). The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

### 1.     *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting

points for the limitations period, and specifies that the latest of these shall apply. See id. §

2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct
>> review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by
>> State action in violation of the Constitution or laws of the United States is
>> removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially
>> recognized by the Supreme Court, if the right has been newly recognized by
>> the Supreme Court and made retroactively applicable to cases on collateral
>> review; or
>> (D) the date on which the factual predicate of the claim or claims presented
>> could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction

6

or other collateral review with respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a

petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida,

130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v.

McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129,

134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable

tolling must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that

cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

**2.** *__Exhaustion Requirement__*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his

claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

7

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented"). The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claim. <u>Rose v. Lundy</u>, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Baldwin</u>

<u>v. Reese</u>, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

<u>Petrucelli v. Coombe</u>, 735 F.2d 684, 687 (2d Cir. 1984) (citing <u>Smith v. Phillips</u>, 455 U.S. 209,

221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

<u>Galdamez v. Keane</u>, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be

"fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and

verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations, (c)
> assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

<u>Daye v. Attorney Gen. of State of N.Y.</u>, 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner

who fails to meet a state's requirements to exhaust a claim will be barred from asserting that

claim in federal court.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.  See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.   *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst

9

v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

### 4.    *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition

10

to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.**     **Analysis of Petitioner's Claims**

   **1.**     ***Fourth Amendment Claims***

The second and third grounds raised in Petitioner's appellate brief, and subsequently argued in his *habeas* petition, assert related Fourth Amendment claims.  First, Petitioner argues that he was seized by police without probable cause.  (See Br. for Def.-Appellant, at 24-28).  Second, Petitioner argues that his statements made subsequent to this unlawful seizure should have been suppressed as fruit of the poisonous tree.  (See id. at 29-33).  Respondent contends, in part, that these related claims are not cognizable upon *habeas* review pursuant to the Stone v. Powell doctrine.  (See Resp't Mem., at 25-31).

11

In <u>Powell</u>, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 482 (1976); <u>see also, e.g.</u>, <u>Graham v. Costello</u>, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]"). Accordingly, Fourth Amendment claims may not be reviewed by this Court unless one of two narrow exceptions apply: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." <u>Capellan v. Riley</u>, 975 F.2d 67, 70 (2d Cir. 1992).

Petitioner does not – nor could he – contend that New York failed to provide corrective procedure to redress his alleged Fourth Amendment claims. Indeed, as the Second Circuit has noted, "the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 <i>et seq.</i> . . . , as being facially adequate." <u>Id.</u> at 70 n.1 (internal quotation marks and citation omitted).

To the extent that Petitioner's filings may be liberally construed, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972) (per curiam) (<i>pro se</i> allegations contained in <i>habeas corpus</i> petitions should be liberally construed); <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996)

12

(internal quotation marks and citation omitted) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted to raise the strongest arguments that [it] suggests"), to argue that an unconscionable breakdown occurred when the hearing court declined to review the legality of Petitioner's arrest due to his failure to procedurally comport with N.Y. Crim. Proc. Law § 710.60 and accompany his motion with a sworn statement of facts, such an argument is unfounded. "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." Smith v. Senkowski, 1999 WL 138903, at *6 (E.D.N.Y. Mar. 10, 1999) (citing Capellan, 975 F.2d at 71).[10] However, where a petitioner was provided "an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal review." Graham, 299 F.3d at 134. "[M]ere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred in the existing process in violation of the petitioner's Fourth Amendment rights." Cook v. Donnelly, 2009 WL 909637, at *5 (W.D.N.Y. Mar. 31, 2009) (citing Capellan, 975 F.2d at 71). Here, Petitioner was provided the opportunity to litigate his seizure claim, yet he failed to comply with the state procedural law in order to take advantage of that opportunity. Because Petitioner's failure is not due to an unconscionable breakdown, his related Fourth Amendment claims must be denied. See, e.g., Mora v. Brown, 2010 WL 3565410, at *10 (S.D.N.Y. Sept. 7, 2010), Report & Recommendation adopted, 2010 WL 5094368 (S.D.N.Y. Dec. 10, 2010) (no breakdown occurred where state court denied petitioner's request for probable cause hearing pursuant to N.Y. Crim. Proc. Law §

---

[10] Copies of unreported cases cited herein will be mailed to Petitioner. See S.D.N.Y. Local R. 7.1(c); Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

13

710.60(3)); Kirk v. Burge, 646 F. Supp.2d 534, 544-45 (S.D.N.Y. 2009) (same); Lin v. Filion,

2004 WL 911777, at *7 (S.D.N.Y. Mar. 19, 2004) (internal citation and quotation marks

omitted) (holding that "[t]he failure to conduct a hearing because of petitioner's failure to

comply with [the] facially reasonable and neutrally applied procedural requirements [of §

710.60(3)] is plainly not an unconscionable breakdown of otherwise adequate state suppression

procedures," and noting that "[i]t also does not constitute a denial of due process, since the states

are free to impose reasonable procedural predicates to the conducting of evidentiary suppression

hearings").

   2.   **Miranda *Claim***

   The first ground raised by Petitioner on direct appeal and in his *habeas* petition asserts

that the hearing court erred in determining that Petitioner was not in custody at the time he was

stopped by police on the sidewalk.  (See Br. for Def.-Appellant, at 18-23).  Petitioner argues that

because he was "surrounded" by police on the sidewalk, informed by police that they wanted to

question him at the station, and frisked before he entered the police vehicle, he was not free to

leave.  (Id. at 20-21).  Accordingly, Petitioner maintains that all of his subsequent statements

were products of a custodial interrogation in violation of Miranda.  (See id. at 18-23).

Respondent contends that the state court's denial of this claim is neither contrary to, nor an

unreasonable application of, clearly established federal law.  (See Resp't Mem., at 32-41).

   It is clear that "[v]olunteered statements of any kind are not barred by the Fifth

Amendment." Miranda, 384 U.S. at 478.  However, when an individual is subjected by law

enforcement to "custodial interrogation," he faces "inherently compelling pressures." Id. at 444,

467.  To ensure that the privilege against self-incrimination is secured in such an atmosphere,

Miranda requires law enforcement to inform a suspect who is in custody and who is being

interrogated that the suspect has a right to remain silent, that anything said may be used as evidence against the suspect at trial, and that the suspect has a right to a retained or an appointed attorney. Id. at 444. Statements obtained in violation of Miranda generally must be suppressed from evidence against the speaker at trial. See, e.g., Oregon v. Elstad, 470 U.S. 298, 317 (1985).

For Miranda purposes, the determination of whether or not a statement was elicited while the defendant was "in custody" involves a two-part inquiry. The court must determine "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995); see also Berkemer v. McCarty, 468 U.S. 420, 442 (1984) ("the only relevant inquiry [in determining when a suspect is in custody for purposes of Miranda] is how a reasonable man in the suspect's position would have understood his situation"). The former portion of the test is "distinctly factual," and thus entitled to the presumption of correctness under AEDPA. Thompson, 516 U.S. at 112. The latter portion of the test is premised upon an objectively reasonable standard, which is a mixed question of both law and fact. Id. at 112-13. Circumstances relevant to the custody determination include "whether a suspect is or is not told that [he or she] is free to leave; the location and atmosphere of the interrogation; the language and tone used by the police; whether the suspect is searched, frisked, or patted down; and the length of the interrogation." Tankleff v. Senkowski, 135 F.3d 235, 244 (2d Cir. 1998) (internal citations omitted).

In this case, the hearing court made several factual determinations regarding the circumstances that existed before Petitioner was read, and waived, his Miranda rights: (1) after

15

the witness pointed out Petitioner standing on the sidewalk, a number of police officers[11] approached Petitioner with their weapons holstered and their identifications displayed, (Nov. 19, 2004 Hr'g Tr., at 91); (2) the police identified themselves as police officers, a detective asked Petitioner if he would come with them to the station and talk with them, and Petitioner agreed, (id.); (3) Petitioner confirmed that his nickname was "Pito," (id. at 92); (4) Petitioner was asked to get into a police car, which he did voluntarily after the police patted him down for weapons, and was driven, unhandcuffed, a short distance to the station, (id. at 91-92); (5) at no time did police display their weapons, (id. at 92); (6) at the station, Petitioner was left alone and unrestrained in an unlocked office containing computers and phones, (id.); (7) Petitioner was offered water, unaccompanied bathroom breaks, and cigarettes during the approximately four hours that he waited to be interviewed, and Petitioner occasionally rested or slept during this time, (id. at 92-93); (8) Petitioner did not ask to leave and was not told he was not free to do so, (id. at 94); (9) about four hours later, after the police had finished interviewing other witnesses, police moved Petitioner to an interview room, obtained pedigree information, and read Petitioner his Miranda warnings, (id. at 93-94); (10) Petitioner then stated he understood his rights and agreed to waive them and speak to police, (id. at 94-95); (11) Petitioner appeared to speak and understand English without difficulty, (id. at 95); and at this point Petitioner provided police with oral, written, and videotaped statements, (id. at 95-97). The hearing court then concluded that, under the circumstances, Petitioner had not been in custody at the time he spoke to police on the sidewalk because an objectively reasonable person would have felt free to leave. (Id. at

---

[11] The court did not make a finding as to how many officers were present when Petitioner was initially approached. Testimony elicited at the hearing indicated that between four and five officers had been present.

100-103). Accordingly, the court found that the admission of Petitioner's statements would not violate Miranda. (Id. at 103).

It is clear that, in light of these factual circumstances, the court did not unreasonably apply Supreme Court precedent in determining that Petitioner was not "in custody" when approached on the sidewalk or taken to the police station. See, e.g., California v. Beheler, 463 U.S. 1121, 1122-25 (1983) (per curiam) (where defendant voluntarily accompanied police to station for questioning and was informed he was not under arrest, defendant was not in custody for purposes of Miranda); Cruz v. Miller, 255 F.3d 77, 86-87 (2d Cir. 2001) (citing Florida v. Bostick, 501 U.S. 429, 438 (1991)) (state court did not unreasonably apply clearly established Supreme Court precedent in determining that petitioner was not in custody for purposes of Miranda where police approached petitioner on public sidewalk with guns drawn, identified themselves as police, demanded petitioner put his hands in the air, frisked petitioner, reholstered their weapons once they determined petitioner was not armed, did not handcuff petitioner, and thereafter briefly questioned petitioner); United States v. Cota, 953 F.2d 753, 758-59 (2d Cir. 1992) (defendant who was ordered to get out of car at gunpoint, briefly handcuffed, voluntarily accompanied law enforcement to police station inside police vehicle while unrestrained, and waited for six hours at station to be questioned, was not in custody for purposes of Miranda); Ortiz v. Artuz, 2010 WL 3290962, at *9 (S.D.N.Y. Aug. 9, 2010) (where petitioner argued that six police officers "surrounded" him, state court did not unreasonably apply federal law in determining petitioner was not in custody for purposes of Miranda where facts also showed that police did not specifically tell petitioner "he had to travel to the precinct" with them and where petitioner was not handcuffed); Cabezudo v. Fischer, 2009 WL 4723743, at *6 (E.D.N.Y. Dec. 1, 2009) (petitioner who was stopped by police, questioned on sidewalk, not placed in handcuffs,

and not informed that he was not free to leave was not in custody for purposes of Miranda); White v. Keane, 1996 WL 527340, at *1 (S.D.N.Y. Sept. 16, 1996) (where petitioner "voluntarily accompanied the police officer to the station, never indicated that he wanted to leave and was allowed to go unescorted to the bathroom," petitioner was not in custody for purposes of Miranda); see also, e.g., United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) ("[t]he number of officers on the scene would not, by itself, have led a reasonable person in [defendant]'s shoes to conclude that he was in custody").[12]  In addition, Petitioner presents no evidence – let alone clear and convincing evidence – to rebut the presumption that the factual determinations found by the hearing court are correct.  Accordingly, the statements were properly admitted and the instant *habeas* claim must be denied.

### 3. *Involuntary Statement Claim*

The fourth claim presented in Petitioner's appellate brief and *habeas* petition asserts that the hearing court erred in failing to suppress the incriminatory statements Petitioner made subsequent to his Miranda waiver on the ground that those statements were coerced and involuntarily. (See Br. for Def.-Appellant, at 34-41).  Specifically, as argued on direct appeal, Petitioner maintains that (1) the hearing court failed to take into account the four hours that Petitioner waited at the station prior to being read his Miranda rights.  (See id.)  In addition, Petitioner's *habeas* Reply brief asserts that his statements were involuntary because (2) he was

---

[12] Cf., e.g., New York v. Quarles, 467 U.S. 649, 655 (1984) (where defendant was surrounded by four police officers and handcuffed, defendant was in custody for purposes of Miranda); Madore v. Beaver, 368 F. Supp.2d 219, 226 (W.D.N.Y. 2005) (where petitioner was surrounded by several officers and a police dog while in handcuffs, petitioner was in custody for purposes of Miranda); United States v. Troche, 181 F. Supp.2d 340, 349 (S.D.N.Y. 2002) (where defendant's vehicle was stopped and searched, told he "would have to accompany officers," patted down, handcuffed, and then placed in a police vehicle, defendant was in custody for purposes of Miranda).

18

under the influence of narcotics at the time, and (3) the officers had taken "full advantage of [his] emotional state by promising to take [him] to the hospital to see his child, whom was taken to the hospital by ambulance moments before the confrontation with law enforcement." (Reply to Resp't Opp'n, at ¶ 17 (Docket No. 27)). Respondent contends that the state court decision finding his statements voluntary is neither contrary to, nor an unreasonable application of, clearly established federal law. (Resp't Mem., at 42-49).

Although not argued by Respondent, I note that arguments (2) and (3), as raised by Petitioner within his Reply brief, are unexhausted. Petitioner did not elicit any testimony at the pretrial hearing to support such arguments,[13] nor did he make such arguments on direct appeal. These arguments have therefore not been fairly presented to the state courts, although they are deemed exhausted and procedurally barred because Petitioner may not now obtain a new suppression hearing in order to produce sufficient facts supporting such assertions. See People v. Gonzalez, 55 N.Y.2d 720, 722 (1981) ("the propriety of the denial [of a suppression motion] must be judged on the evidence before the suppression court" at the time). Nonetheless, because Petitioner presents no argument suggesting cause and prejudice, or a resulting fundamental miscarriage of justice, for his procedural defaults, these arguments may not be reviewed by this Court.[14] Because Petitioner's first argument regarding the length of time he spent at the police

---

[13] To the extent that the narcotics issue was raised, it was done through defense counsel's cross-examination of the interviewing detectives regarding whether Petitioner appeared to be under the influence of any narcotic at the time. (Nov. 19, 2004 Hr'g Tr., at 58-59, 81). Both detectives stated that he did not, and the hearing court credited their responses. (Id. at 59, 81, 89). No information about a child in the hospital was elicited.

[14] In any event, I note that the evidence adduced at the pretrial hearing reveals that Petitioner's newly raised arguments lack merit. The hearing court heard testimony from the interviewing detectives, observed Petitioner's demeanor on videotape, and specifically found that Petitioner "did not appear to be under the influence of any drug." (Nov. 19, 2004 Hr'g Tr.,

station was raised on direct appeal, I now address its merits under AEDPA's deferential

standard.

It is well-established that due process prohibits the use of a coerced, involuntary

confession – evidence which is "inherently untrustworthy" – to secure a defendant's conviction.

Dickerson v. United States, 530 U.S. 428, 433 (2000).  The test employed to determine "whether

or not a defendant's will was overborne" examines the totality of the circumstances surrounding

his confession.  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); see also Dickerson, 430

U.S. at 434.  Those circumstances include "both the characteristics of the accused and the details

of the interrogation."  Dickerson, 430 U.S. at 434 (quoting Schneckloth, 412 U.S. at 226).[15]

While, in the absence of clear and convincing evidence to the contrary, the factual

---

at 98).  The court also found that the interviewing detectives had acted properly, determining that
Petitioner's "statements were not the product of the use, or threatened use . . . [of ] undue
pressure, or any other meaning of improper coercion by law enforcement officials, which
undermined [his] ability to choose whether or not to make a statement."  (Id. at 105).  Petitioner
has failed to rebut the presumption that such findings are correct.  28 U.S.C. § 2254(e)(1).

[15] See also Green v. Scully, 850 F.2d 894, 902 (2d Cir. 1988) (internal citations and
quotation marks omitted), noting that factors to consider include:

> (1) [T]he characteristics of the accused, (2) the conditions of interrogation, and (3)
> the conduct of law enforcement officials.  The relevant characteristics of the
> individual who confessed are the individual's experience and backgrounds, together
> with the suspect's youth and lack of education or intelligence.  The second
> circumstance, the conditions under which a suspect is questioned, includes the place
> where the interrogation is held, and the length of detention.  The presence or absence
> of counsel is a significant condition . . . .  The final and most critical circumstance
> . . . is the law enforcement officers' conduct.  Facts bearing on that conduct include
> the repeated and prolonged nature of the questioning or the failure to inform the
> accused of his constitutional rights; whether there was physical mistreatment such
> as beatings; or long restraint in handcuffs, and whether other physical deprivations
> occurred such as depriving an accused of food, water, or sleep; or even of clothing
> for a prolonged period.  In addition . . . such police conduct might include
> psychologically coercive techniques such as brainwashing or promises of leniency
> or other benefits.

determinations made by a state court are entitled to a presumption of correctness, see 28 U.S.C.

§ 2254(e)(1), "[t]he statutory presumption refers to historical facts, that is, recitals of external

events and the credibility of the witnesses narrating them. . . . If the material facts were not

adequately developed at the State court hearing or the District Court finds that the factual

determination is not fairly supported by the record, the presumption of correctness is set aside,"

Nelson, 121 F.3d at 833 (internal citations and quotation marks omitted).

     In this case, the issue of the voluntariness of the statements Petitioner gave to police after

he waived Miranda was a subject of the pretrial hearing.  After hearing testimony of the two

detectives who had interviewed Petitioner and reviewing the physical evidence presented by the

prosecution – which included a signed Miranda waiver card, a written statement, and a videotape

– the Court, in addition to the factual determinations described above, found that:[16] between

approximately 9:20 p.m. and 1:15 a.m., Petitioner was left alone and unrestrained in an unlocked

room with phones and computers, offered water and bathroom breaks, provided with cigarettes

and water, and at some points appeared to be resting or sleeping, (Nov. 19, 2004 Hr'g Tr., at 92-

93); Petitioner was advised that detectives were interviewing others at the moment and that they

would speak to him afterwards, (id. at 93); at about 1:15 a.m., Petitioner was taken, unrestrained,

down the hallway to an interview room containing a table and chairs, answered pedigree

questions, and was read and waived his Miranda rights, (id. at 94-95); at no time did Petitioner

ask to leave, (id. at 94); after being questioned about his relationship with Meneses, Petitioner

proceeded to give an oral statement, (id. at 95); afterwards, Petitioner was asked to make, and he

consented to provide, a written statement to the same effect, which was produced by way of

---

[16] The defense presented no evidence during the pretrial hearing.

computer, which Petitioner was permitted to edit, and which culminated in Petitioner's signature on each of the statement's printed pages confirming that the contents were accurate, (id. at 95-96); and Petitioner was then asked to make, and consented to provide, a videotaped statement to the same effect, in which he stated that he freely chose to make the statement, acknowledged that he knowingly and voluntarily signed the Miranda card and waived his rights, and confirmed that his written statement was accurate, (id. at 96-97).

Contrary to Petitioner's assertions that the court failed to consider the full amount of time that Petitioner remained at the station – or specifically, the four hours that he waited alone in an office at the station – the transcripts of this hearing show that the court made specific, factual determinations which show otherwise. (See id. at 106 (stating that the court had reviewed the "totality of the circumstances," including "the particular characterization of the defendant, including his age, his appearance, the viewing of the videotape [of Petitioner's statements], as well as the conditions surrounding the questioning, the *temporal duration*, and manner, in which the police dealt with the defendant") (emphasis added); id. at 92-93 (factual findings enumerated by the court include the five hour duration of the interrogation, the total amount of time that Petitioner remained at the police station, the time of night when he was there, as well as the fact that Petitioner had either rested or slept while waiting for the interview)). Accordingly, because the record demonstrates that the material facts were adequately developed, the hearing court's decision – as well as the Second Department's decision affirming the hearing court – was not unreasonable. Moreover, in light of the totality of the circumstances found by the hearing court, the additional fact that Petitioner was left alone at the police station for four hours prior to his interview does not establish that Petitioner's will was overborne. See, e.g., Cota, 953 F.2d at 758-59 (where defendant voluntarily accompanied police to station, six hour wait before

22

questioning did not render statement involuntary); Colon v. Ercole, 2010 WL 9401, at *34

(S.D.N.Y. Jan. 4, 2010), Report & Recommendation adopted, 2010 WL 3767079 (S.D.N.Y.

Sept. 27, 2010) (where petitioner voluntarily accompanied police to station, three and one-half

hour "break" in between questioning was not sufficient to render statement involuntary); Harris

v. Woods, 2006 WL 1140888, at *32 (S.D.N.Y. May 1, 2006) (statement not rendered

involuntary where petitioner spent six hours at police station prior to making first statement and

allowed to sleep or rest during that time). Accordingly, this claim must be denied.

###   4.    *Cross-Examination Claim*

The fifth claim raised in Petitioner's appellate brief and *habeas* petition asserts that the

hearing court deprived Petitioner of certain constitutional rights when it sustained objections

made by the prosecutor during defense counsel's cross-examination of a State witness at the

suppression hearing. (See Br. for Def.-Appellant, at 42-49). Specifically, Petitioner argues that

the hearing court improperly prevented his attorney from questioning a detective as to "whether

[Petitioner] was free to leave at the point that the police officer's [*sic*] approached him on the

street," and "at any time after he was brought to the station." (Id. at 43 (citing Nov. 19, 2004

Hr'g Tr., at 53-56)). Respondent contends that the Second Department's denial of this claim was

neither contrary to, nor an unreasonable application of, clearly established federal law.[17] (See

Resp't Mem., at 50-53).

I note that it is not clear whether, on direct appeal, Petitioner based this claim on his right

---

[17] The Second Department's written opinion did not specifically address this claim. Rather, it denied it by stating that "[t]he defendant's remaining contentions are without merit." Irizarry, 827 N.Y.S.2d at 883. This adjudication constitutes a decision on the merits, which requires this Court to address the claim under AEDPA's deferential standard of review. See, e.g., Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002) (claim was adjudicated on the merits where state court dismissed it by stating "defendant's remaining contentions are without merit").

to due process, (see, e.g., Br. for Def.-Appellant, at 42), or the Confrontation Clause of the Sixth Amendment, (see, e.g., id. at 44).  In either case, however, Petitioner cannot establish entitlement to federal *habeas* relief.

 To the extent that Petitioner raises a Confrontation Clause issue, I initially note that the Supreme Court has not clearly established whether or not such rights extend to pretrial hearings. See Pennsylvania v. Ritchie, 480 U.S. 39, 54 n.10 (1987) (citing McCrary v. Illinois, 386 U.S. 300, 311-13 (1967)) (observing that the Court "has normally refused to find a [Confrontation Clause] violation when the asserted interference with cross-examination did not occur at trial"); see also, e.g., Lewis v. Zon, 573 F. Supp.2d 804, 818-19 (S.D.N.Y. 2008) (internal citations omitted) (stating that although "it is likely that due process will often require cross-examination of witnesses at competency hearings to protect a defendant's right . . . to controvert the state's evidence, it is unclear whether the Supreme Court has recognized such a right under, or that such a right necessarily derives from, the Confrontation Clause").  Accordingly, Petitioner cannot demonstrate that the Second Department's denial of this claim is either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

 In any event, the claim also fails on its merits.  The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  This right of confrontation embodies the right of the defendant to "a meaningful opportunity to present a complete defense."  Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotation marks and citation omitted).  This right also "'means more than being allowed to confront the witness physically.'"  Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 315 (1974)).  Specifically, it includes the "'opportunity of cross-examination.'"  Id. (quoting Davis, 415 U.S. at 315-16))

24

(emphasis omitted).  This right, however, is not absolute.  See, e.g., Taylor v. Illinois, 484 U.S.

400, 411 (1988); Chambers v. Mississippi, 410 U.S. 284, 302 (1973); Washington v. Schriver,

255 F.3d 45, 55 (2d Cir. 2001).  The right to present evidence "'may, in appropriate cases, bow

to accommodate other legitimate interests in the criminal trial process.'"  Michigan v. Long, 500

U.S. 145, 149 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)); see also, e.g.,

Hawkins v. Costello, 460 F.3d 238, 243 (2d Cir. 2006).  Specifically, a state court may exclude

evidence in order to prevent "harassment, prejudice, [or] confusion of the issues," Crane, 476

U.S. at 689-90, or otherwise "through the application of evidentiary rules that serve the interests

of fairness and reliability," Chambers, 410 U.S. at 302.

       The Second Circuit has established a two-part test to assist federal *habeas* courts in

determining, under AEDPA review, whether a petitioner's claim involving his Sixth Amendment

right to present a complete defense warrants relief.  First, the court must assess "the propriety of

the trial court's evidentiary ruling."  Hawkins, 460 F.3d at 244 (internal quotation marks and

citation omitted).

> Of course, habeas corpus relief does not lie for errors of state law, and that
> necessarily includes erroneous evidentiary rulings.  The inquiry, however, into
> possible state evidentiary law errors at the trial level assists [the Court] in
> ascertaining whether the appellate division acted within the limits of what is
> objectively reasonable.

Id. (internal quotation marks and citations omitted).  Second, if the ruling was proper pursuant to

state evidentiary rules, the federal court must "consider whether the evidentiary rule is arbitrary

or disproportionate to the purposes it is designed to serve."  Id. at 244 (internal quotation marks

and citations omitted).  "A state evidentiary rule is 'unconstitutionally arbitrary or

disproportionate only where it has infringed upon a weighty interest of the accused,'" id.

(quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998)), and this generally only involves rules which result in a "blanket exclusion" of a category of evidence, <u>Wade v. Mantello</u>, 333 F.3d 51, 60 (2d Cir. 2003) (quoting <u>Crane</u>, 476 U.S. at 690).[18]

In this case, the hearing court excluded from evidence testimony by the detective as to whether or not the detective believed that Petitioner was "free to leave," and it did so on the ground that such evidence was irrelevant. (<u>See</u> Nov. 19, 2004 Hr'g Tr., at 53-56). This decision cannot be said to be erroneous as a matter of New York evidentiary law. New York's evidentiary rules regarding relevancy parallel the Federal Rules of Evidence: relevant evidence is admissible, evidence is relevant if it tends to prove the existence or non-existence of a material fact, but "[a] court may, in its discretion, exclude relevant evidence if its probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury." <u>People v. Primo</u>, 96 N.Y.2d 351, 355 (2001) (internal quotation marks and citation omitted); <u>see also</u> Fed. R. Evid. 401-03. "Evidence of merely slight, remote or conjectural significance will ordinarily be insufficiently probative to outweigh these countervailing risks." <u>Primo</u>, 96 N.Y.2d at 355 (internal quotation marks and citation omitted). Finally, a trial judge is afforded "wide discretion in making evidentiary rulings." <u>People v. Carroll</u>, 95 N.Y.2d 375, 385 (2000).

---

[18] Additionally, I note that, even prior to AEDPA's statutory changes to a federal court's standard of review,

> [T]he Supreme Court had a traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. The court has never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted.

<u>Hawkins</u>, 460 F.3d at 244.

26

Here, the legal issue to be determined by the hearing court was whether or not Petitioner

was "in custody" for purposes of Miranda. Defense counsel sought to inquire into the subjective

belief of the detective and determine whether that detective thought that Petitioner would not

have been free to leave. As discussed above, the subjective belief and opinion of the detective is

not a factor to consider in determining the issue of custody for Miranda purposes. Similarly, to

the extent that Petitioner has based his claim on his right to due process, such a claim is also

meritless because the information sought by defense counsel was simply not relevant to the

custody issue before the hearing court. Accordingly, the hearing court's ruling, and the Second

Department's denial of this claim, were both proper, and therefore this claim must be denied.

**5.** ***Ineffective Assistance of Counsel***

The final claim raised on direct appeal and within this *habeas* petition asserts that

defense counsel was ineffective for failing to, at the conclusion of the suppression hearing, offer

either an oral or written argument as to each of the claims identified above. (See Br. for Def.-

Appellant, at 50, 54). Petitioner also asserts that counsel was ineffective for failing to move for

a hearing to determine the legality of his arrest. (See id. at 52-53). Respondent contends that the

Second Department's denial of this claim was neither contrary to, nor an unreasonable

application of, clearly established federal law. (See Resp't Mem., at 54-57).

The Counsel Clause of the Sixth Amendment of the United States Constitution provides

that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his

defense." U.S. Const. Amend. VI. The Supreme Court has construed this clause to afford

criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson,

397 U.S. 759, 771 n.14 (1970). A *habeas* petitioner's ineffective assistance of counsel claim

will succeed on the merits if the petitioner proves (1) that counsel's representations "fell below

27

an objective standard of reasonableness," as measured under "prevailing professional norms,"
Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have
been different," id. at 694.

    *Habeas* petitioners bear the burden of proving both prongs of the Strickland test. He or
she must therefore prove that his or her attorney's actions were objectively unreasonable as well
as that he or she was prejudiced to the extent that there exists a reasonable probability that the
result of the proceeding would have been different. Id. at 689, 693. To show that an attorney's
conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's
conduct falls within the wide range of reasonable professional assistance." Id. at 689.
Additionally, a "fair assessment of attorney performance requires that every effort be made to
eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's
challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.
Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for
a court deciding an ineffective assistance claim . . . to address both components of the inquiry if
the defendant makes an insufficient showing on one." Id. at 697.

    In this case, mere contention that defense counsel was ineffective simply for failing to
make a closing argument at the end of the pretrial hearing does not suffice to meet Petitioner's
burden of proof that this constituted objectively unreasonable conduct. Indeed, without more,
counsel's decision may simply reflect trial strategy. See id. at 689 (decisions that "might be
considered sound trial strategy" do not reflect ineffective assistance of counsel); Henry v.
Stinson, 1997 WL 664631, at *1 (2d Cir. Oct. 17, 1997) (trial counsel's choice of summation
techniques may be viewed as a strategic decision); see also United States v. Helgesen, 669 F.2d

28

69, 72 (2d Cir. 1982) (explaining the "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"); Singleton v. Duncan, 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006) (citing Jones v. Barnes, 463 U.S. 745, 752 (1983)) ("a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy").  Moreover, even assuming that defense counsel's decision not to make such an argument did constitute deficient conduct, Petitioner has not established there exists a reasonable probability that the outcome of the suppression hearing would have been different had such an argument been made.  As discussed above, the hearing court evaluated all relevant circumstances in determining whether or not Petitioner had been in custody for purposes of Miranda, and in determining the voluntariness of Petitioner's later statements.  Further summation emphasizing certain factors over others does not suffice to show a reasonable probability that the court would have reached different conclusions.

Likewise, Petitioner's ineffective assistance of counsel claim based on counsel's failure to properly move for a probable cause hearing pursuant to N.Y. Crim. Proc. Law § 710.60 must also be denied because Petitioner cannot establish that the result of the hearing would have been different.  First, there is nothing in the record to indicate that Petitioner disagrees with the testifying detectives' version of what occurred on the sidewalk or on the way to the police station.  Second, the same evidence that was already adduced at the hearing to determine the Miranda and voluntariness issues would have been used to make any Fourth Amendment seizure determination as well.  Yet this evidence shows that the encounter with police was consensual and that a reasonable person would have felt free to leave.  Petitioner therefore cannot establish that his statements would have been suppressed as tainted fruit of an unconstitutional seizure had his attorney properly comported with § 710.60.  See Bostick, 501 U.S. at 434 ("So long as a

29

reasonable person would feel free to disregard the police and go about his business . . . the encounter is consensual and no reasonable suspicion is required.  The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature."); <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980) (plurality opinion) ("a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"); <u>see also</u> <u>I.N.S. v. Delgado</u>, 466 U.S. 210, 215 (1984) (adopting <u>Mendenhall</u>'s "free to leave" test); <u>Mendenhall</u>, 446 U.S. at 555 (no seizure occurred where agents approached defendant in a public area, displayed no weapons, identified themselves as agents, and asked questions).  Accordingly, Petitioner's claim must be denied.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. <u>See</u> 28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M.

Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601,

and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.


Dated: May 26, 2011
          White Plains, New York


                                        Respectfully Submitted,



                                        Paul E. Davison
                                        United States Magistrate Judge
                                        Southern District of New York


A copy of the foregoing Report and Recommendation has been sent to the following:

              The Honorable Kenneth M. Karas
              United States Courthouse
              300 Quarropas Street
              White Plains, New York  10601

              Amede Irizarry, *pro se*
              05-A-0711
              Wende Correctional Facility
              3040 Wende Road
              Alden, NY 14004-1187

              John J. Sergi, Esq.
              Office of the Westchester County District Attorney
              111 Dr. Martin Luther King, Jr. Blvd.
              White Plains, NY 10601


31