UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



AMEDE IRIZARRY,

                    Petitioner,

-against-

ROBERT ERCOLE, SUPERINTENDENT, GREEN HAVEN CORRECTIONAL FACILITY,

                    Respondent.

Case No. 08-CV-5884 (KMK)

ORDER ADOPTING REPORT & RECOMMENDATION

KENNETH M. KARAS, District Judge:

Petitioner, proceeding pro se, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of murder in the first degree following a jury trial, and was sentenced to life in prison without the possibility of parole. (Report and Recommendation ("R&R") at 1 (Dkt. No. 28).) In 2009, the Petition was referred to Magistrate Judge Paul E. Davison for review, pursuant to 28 U.S.C. § 636(b).[1] On May 26, 2011, Judge Davison issued his final R&R, recommending that this Court deny the petition. (R&R at 1.)[2] Petitioner filed timely objections to that R&R.[3] For the reasons stated herein, the Court adopts the R&R in its entirety and denies the Petition.

---

[1] The case was referred to Magistrate Judge Mark D. Fox on October 24, 2008. (Dkt. No. 2.) It was then reassigned to Magistrate Judge Davison on January 12, 2009. (Dkt. No. 10.)

[2] Magistrate Judge Davison has offered two R&Rs in this matter. (Dkt. Nos. 12, 28).) The first, adopted by this Court on September 30, 2009, addressed Respondent's Motion To Dismiss; the second, the Petition on the merits. R&R citations herein refer to the latter.

[3] Petitioner claims that he placed his objections in the mailbox at Sing Sing Correctional Facility on September 21, 2011. The Court assumes that this is correct. Petitioner's extended deadline for filing objections was October 1, 2011. (Dkt. No. 31.)

## I. Background

Although the Court assumes the Parties' general familiarity with the factual and procedural background of this case as set forth in the R&R, the Court will briefly summarize the facts most salient to this petition. In February 2004, the Yonkers police began investigating the disappearance of Ignacio Meneses. Officers eventually discovered his body in a small wooded area in a park, where he had apparently been stripped, robbed, and beaten to death. (R&R at 1–2.) A medical examiner performed an autopsy and determined that Meneses' injuries had been caused by a blunt force instrument. The examiner specifically concluded that Meneses' injuries likely were not caused by his falling down the hill in the park where his body had been found. (*Id.* at 2.)

One of the investigating detectives spoke with a witness who had been with Meneses prior to his death, and the witness identified Petitioner—referring to him as "Pito"—as someone who also knew Meneses. (*Id.* at 2 n.1.) On March 1, 2004, the witness agreed to drive with him and another detective to Petitioner's residence. While they were driving in the vicinity, the witness noticed Petitioner standing on the sidewalk and pointed him out to the officers. (*Id.* at 2.) The two detectives did not approach Petitioner immediately, but rather drove the witness back to her home and informed several colleagues that they intended to speak with Petitioner. (Pretrial Hr'g, Honorable Richard A. Molea, Justice, Superior Court, Tr. ("Hr'g") at 91.) A short time later, the two detectives, accompanied by two or three other detectives, drove back to Petitioner's residence, and they again found Petitioner on the sidewalk. (*Id.*) All of the officers exited their vehicles, and approached Petitioner with their police shields displayed. The investigating detective asked if Petitioner was "Pito," and Petitioner confirmed that he was. The officer then asked if Petitioner would go to the station for questioning; Petitioner agreed. (R&R

2

at 2 n.1) Pursuant to standard protocol, the officers patted down Petitioner, before he entered one of the police vehicles. (Hr'g at 92.) At no point did the police draw their weapons or handcuff Petitioner, and the entire encounter lasted approximately one minute. (*Id.*)

At the police station, Petitioner waited to be interviewed until the detectives could finish talking to other witnesses. During the four hours while Petitioner waited, he was unrestrained; he was offered water, cigarettes, and bathroom breaks; he occasionally appeared to be resting or sleeping with his head down; and the door to the room he was waiting in remained unlocked. (R&R at 2; Hr'g at 93.) Two officers then walked with Petitioner to a separate room for the interview. After obtaining pedigree information from Petitioner, the officers informed him of his *Miranda* rights. Petitioner waived his rights orally and by signing a warning of rights card. (R&R at 2; Hr'g at 94–95.) He subsequently provided the officers with "oral, written, and videotaped statements in which he admitted that he had been with Meneses when Meneses had died, but stated that Meneses had died as a result of falling down a hill." (R&R at 2.) Shortly thereafter, Petitioner was arrested and charged with murdering Meneses.

Before trial, trial counsel filed an omnibus motion asking, in part, for the court to suppress the statements Petitioner had given to the police on the grounds that the statements were the product of an arrest without probable cause in violation of the Fourth Amendment and of custodial interrogation in violation of Petitioner's *Miranda* rights. (*Id.* at 3.) The court held a hearing to address Petitioner's *Miranda* claim, but the court declined to address Petitioner's Fourth Amendment argument, because Petitioner had not provided a sworn affidavit of facts in support of his motion, as required by New York law, *see* N.Y. Crim. Proc. Law. § 710.60(1), (3)(b). (R&R at 3.) The court ultimately rejected Petitioner's remaining claims, holding that he had not been entitled to *Miranda* warnings when he was questioned on the sidewalk, because he

3

was not in custody at that time; that he had voluntarily accompanied the police for questioning; that he later received his *Miranda* warnings and knowingly waived his *Miranda* rights; and that his post-*Miranda* statements were made voluntarily. (R&R at 3.)

After the trial, Petitioner retained appellate counsel and appealed his conviction to the Second Department, asserting six grounds for relief. (*Id.* at 4–5.) First, he claimed that the hearing court erred in determining that he was not in custody when he was stopped on the sidewalk. Second, he argued that he was arrested by the detectives while he was standing on the sidewalk without probable cause in violation of the Fourth Amendment. Third, he claimed that the hearing court erred in determining that his statements were not the fruit of an unlawful arrest. Fourth, he claimed that the hearing court erred in holding that his statements to the police were voluntary. Fifth, he asserted that the hearing court had deprived him of his constitutional right to cross examine witnesses at the suppression hearing. And sixth, he asserted that trial counsel had been constitutionally ineffective. The Second Department rejected these claims in a published decision. *People v. Irizarry*, 827 N.Y.S.2d 883 (App. Div. 2007). Petitioner's request for leave to appeal to the Court of Appeals was denied. (R&R at 5.) He did not appeal to the United States Supreme Court or seek state collateral relief. (*Id.*)

Petitioner timely filed the instant petition in June 2008, repeating each of the grounds for relief that he had presented on appeal to the Second Department. Respondent filed a Motion To Dismiss, (Dkt. No. 6), which this Court denied on September 30, 2009, (Dkt. No. 14). After receiving briefing from the Parties, Magistrate Judge Davison issued a thorough R&R on May 26, 2011, recommending that the petition be denied in its entirety. (Dkt. No. 28.) Petitioner was granted several extensions by this Court and ultimately filed timely objections to Judge Davison's R&R on September 19, 2011.

## II. Discussion

### A. Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made within seventeen days after the objecting party was served with a copy of the report and recommendation by mail, *see* 28 U.S.C. § 636(b)(1) (objection due within fourteen days after service of report and recommendation); Fed. R. Civ. P. 72(b)(2) (same); Fed. R. Civ. P. 6(d) (granting three additional days when service is by mail).

Where a party timely objects to a report and recommendation, as Petitioner has done here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)). Because Petitioner is proceeding pro se, the Court construes Petitioner to have objected to the entirety of Judge Davison's R&R and reviews his claims de novo. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam) (explaining that courts must liberally construe submissions by pro se litigants).

Finally, however, under the Anti-Terrorism and Effective Death Penalty Act of 1996, this Court's review of Petitioner's claims is limited. *See* 28 U.S.C. § 2254(d). A reviewing court may grant habeas relief only if a petitioner shows that the state court proceedings below "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts . . . ." *Id.*

B. Analysis

The Court has reviewed Petitioner's claims and Magistrate Judge Davison's R&R, and finds the R&R to be without error, clear or otherwise. Indeed, very little more need be said regarding Petitioner's claims. Only a few points merit brief amplification.

The Court adopts Judge Davison's findings and conclusions regarding Petitioner's *Miranda* claim. The hearing court determined that Petitioner was not in custody when the police stopped him on the sidewalk and asked him to accompany them for questioning. It denied Petitioner's motion to suppress the incriminating statements he made following that encounter. Petitioner argues that the hearing court's decision was in error.

The determination of whether an individual is in custody involves a two-step inquiry: First, a court must consider "the circumstances surrounding the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also United States v. Guzman*, --- F. Supp. 2d ---, No. 10-CR-0074, 2012 WL 3038542, at *12 (E.D.N.Y. July 26, 2012) (noting that a court must balance the "factors that relate to the circumstances surrounding the interrogation"). A court's findings regarding the first step of the inquiry are factual. *See Colon v. Ercole*, No. 09-CV-5168, 2010 WL 9401, at *31 (S.D.N.Y. Jan. 4, 2010) (collecting authority for the proposition that the circumstances of interrogation are a matter of fact), *adopted in its entirety by* 2010 WL 3767079

(S.D.N.Y. Sept. 27, 2010). Accordingly, a state court's findings at this step are entitled to a presumption of correctness on habeas review. *See* 28 U.S.C. § 2254(d); *Colon*, 2010 WL 9401, at *31. As noted, the hearing court found, inter alia, that Petitioner was approached on the sidewalk by several—perhaps four or five—police officers; the officers kept their weapons holstered; the officers identified themselves and requested that Petitioner accompany them to the station for questioning; Petitioner agreed to accompany them and got into a car with one of the officers; and the entire encounter was very brief. Petitioner has not presented any evidence that calls into question these factual findings.

Second, the court must determine whether, "given those circumstances, . . . a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112. The hearing court concluded that under the above-described circumstances, Petitioner was not in custody when he spoke to police on the sidewalk, because an objectively reasonable person in his position would have felt free to leave. This conclusion was not an unreasonable application of clearly established federal law; to the contrary, this conclusion finds ample support in the caselaw, as demonstrated by Magistrate Judge Davison's exhaustive R&R. (R&R at 17–18 (collecting cases).) Petitioner claims that even if the officers' initial approach was permissible, they placed him in custody—and consequently were required to provide *Miranda* warnings—when they requested that he accompany them for further questioning. (Reply to Recommendation at 2–3.) This proposition has been squarely rejected by the Second Circuit. *See United States v. Cota*, 953 F.2d 753, 756, 758–59 (2d Cir. 1992) (finding that a defendant who had been stopped, held briefly at gunpoint, and briefly handcuffed, and who voluntarily agreed to accompany an officer to the sheriff's station for questioning was not in custody); *see also Ortiz v. Artuz*, No. 09-CV-5553, 2010 WL 3290962, at *9 (S.D.N.Y.

7

Aug. 9, 2010) (finding petitioner was not in custody when six police officers arrived at the suspect's apartment and asked him to go to the precinct for questioning); *United States ex rel. Mahler v. Perez*, No. 06-CV-5109, 2007 WL 1825403, at *7 (E.D.N.Y. June 21, 2007) ("A person who voluntarily accompanies the police to the station for questioning, without more, is not in custody. Nor does the interview room setting convert the noncustodial situation to one in which *Miranda* applies" (citations and internal quotation marks omitted)). Therefore, the Court concludes that Petitioner was not in custody when he agreed to accompany the police officers to the station to answer their questions, and denies this habeas claim.

The Court also adopts Magistrate Judge Davison's findings and conclusions regarding Petitioner's Fourth Amendment claims. Petitioner argues that when the police officers approached him on the sidewalk, they seized him without probable cause, and, consequently, the hearing court should have ruled his post-seizure incriminating statements inadmissible. Magistrate Judge Davison concluded that Petitioner is barred from asserting these Fourth Amendment claims as a basis for habeas relief under the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 482 (1976). Petitioner had a full opportunity to litigate these issues before the hearing court. *See Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) (noting that New York mechanism for litigating Fourth Amendment claims is "facially adequate" (internal quotation marks omitted)). The hearing court properly refused to consider these claims due to Petitioner's procedural failure to supply an affidavit in support of his motion to suppress. *See, e.g., Onega v. Ercole*, No. 07-CV-1222, 2012 WL 2377789, at *8 (E.D.N.Y. June 25, 2012) ("Under New York law, a criminal defendant is not entitled to a suppression hearing unless he provides sworn allegations of fact that establish a legal basis for suppression."); *Lopez v. Lee*, No. 11-CV-2706, 2011 WL 6068119, at *9 n.11 (E.D.N.Y. Dec. 7, 2011) ("Under New York

8

law, a criminal defendant is not entitled to a suppression hearing unless he provides 'sworn allegations of fact' that establish a legal basis for suppression." (quoting N.Y.Crim. Proc. Law § 710.60(1) & (3)) (citing *People v. Bryant*, 869 N.E.2d 7, 9 (N.Y. 2007)). The hearing court's refusal did not qualify as an "unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70; *see also Onega*, 2012 WL 2377789, at *8 (collecting authority for proposition that "[t]he mere denial of an evidentiary hearing for insufficient allegations of fact is not an 'unconscionable breakdown' of such available procedures"). Under these circumstances, the hearing court's rejection of Petitioner's Fourth Amendment claims bars his advancing these claims here. *See Stone*, 428 U.S. at 482; *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

In his objections to the R&R, Petitioner claims that there was an unconscionable breakdown in the underlying process. Specifically, the hearing court refused to consider Petitioner's Fourth Amendment claims, because trial counsel failed to submit an affidavit of facts underlying Petitioner's motion to suppress, as required by New York Criminal Procedure Law § 710.60(1), and Petitioner avers that an unconscionable breakdown occurs wherever, as here, "there has been no meaningful inquiry by the state court into defendants [sic] claim." (Reply to Recommendation at 4.) But Petitioner is simply wrong as a matter of law. (R&R at 13–14 (collecting cases for the proposition that no breakdown occurs where a New York state court denies a hearing pursuant to New York Criminal Procedure Law § 710.60.)[4]

---

[4] Petitioner argues that an unconscionable breakdown occurred due to his counsel's failures. But here too, Petitioner is simply wrong as a matter of law: Ineffective assistance of counsel does not constitute an unconscionable breakdown for the purposes of *Stone v. Powell*. *See Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y. 1987) (noting that "the Court may not sidestep *Stone v. Powell* by equating ineffective assistance of counsel with unconscionable breakdown"); *see also Garcia v. Bradt*, No. 09-CV-7941, 2012 WL 2426773, at *12 (S.D.N.Y. Jan. 24, 2012) (same), *adopted by* 2012 WL 3027780 (S.D.N.Y. July 23, 2012). In any event, as discussed below, Petitioner has not demonstrated ineffective assistance of counsel.

Petitioner's Fourth Amendment claims also fail on the merits. The hearing court's factual findings regarding Petitioner's *Miranda* claim, recounted above, lead inexorably to the conclusion that Petitioner was not arrested or otherwise seized when the police approached him on the sidewalk. The test for determining whether an individual was seized, like the test for determining whether an individual was in custody, primarily turns on the issue of whether a reasonable person would have felt free to end the encounter and leave. *See Cruz v. Miller*, 255 F.3d 77, 82 (2d Cir. 2001) ("While the [Supreme] Court was articulating a 'freedom of movement' standard for *Miranda* warnings, it was developing what appeared to be a similar 'free to leave' standard for determining when a seizure occurred for purposes of the Fourth Amendment."); *Mahler*, 2007 WL 1825403, at *8 ("Even if a reasonable person would not have thought herself free to leave from the interview room, at this stage a reasonable person would not have felt that her freedom had been restrained to a degree associated with formal arrest. Thus, she was not 'in custody.'"); *accord United States v. Saenz*, No. 10-CR-1135, 2010 WL 5860323, at *4 n.10 (S.D. Tex. July 6, 2010) (noting that "the core meaning both of seizure in the Fourth Amendment sense, and [of] custody in the *Miranda* sense, appears to be the same: the restraint of a person's freedom to walk away from the police"). Moreover, whatever space, if any, exists between the test for seizure and the test for custodial interrogation, is not meaningful here. Petitioner's interaction with the police officers on the street was consensual. Consequently, his Fourth Amendment claims are denied.

The Court adopts without further comment Judge Davison's factual findings and legal conclusions as to Petitioner's claims that his post-*Miranda* statements were involuntary and that he was impermissibly denied the opportunity to cross examine a witness at the suppression hearing.

10

Finally, the Court construes Petitioner's objection to the R&R as renewing his claim that he did not receive effective assistance from trial counsel. Specifically, Petitioner suggests that trial counsel's representation was constitutionally deficient on two bases. First, counsel was allegedly deficient, because he failed to submit a statement of facts in support of Petitioner's motion to suppress. As noted, New York Criminal Procedure Law § 710.60 requires such a submission. And due to Petitioner's and trial counsel's failure to make such a submission, the hearing court refused to consider Petitioner's Fourth Amendment claims. An ineffective assistance of counsel claim requires a claimant to prove both that counsel's representation "fell below an objective standard of reasonableness," measured under "prevailing professional norms," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

This ineffective assistance claim fails at the so-called "prejudice," or "second," prong of the *Strickland* inquiry. *See id.* at 697 (instructing that a court may bypass the first inquiry "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice"); *Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (not deciding "whether counsel's performance was so outside the wide range of professionally competent assistance as to constitute ineffective assistance under the Sixth Amendment," because "appellant was not prejudiced by his attorney's failure" (internal quotation marks omitted)). Regardless of whether trial counsel's failure to submit an affidavit in support of Petitioner's motion to suppress fell below an objective standard of reasonableness, the failure was not prejudicial to Petitioner. As noted, even if trial counsel had complied with the requirements of New York Criminal Procedural Law § 710.60, Petitioner's Fourth Amendment claims would have failed. The same

11

facts that led the hearing court to conclude that Petitioner was not in custody when he spoke with the police officers on the sidewalk compel the conclusion that Petitioner was not seized by the officers on the sidewalk. *See Cruz*, 255 F.3d at 82; *Mahler*, 2007 WL 1825403, at *7–8.

Second, Petitioner suggests that trial counsel was ineffective by failing to "ascertain" that Petitioner has "mental health issues" and, consequently, by failing to argue that, based on these issues, Petitioner was incapable of giving valid consent to the officers who requested that he accompany them for questioning. (Reply to Recommendation at 4.) The Court initially notes that Petitioner has never previously raised any argument based on his "mental health issues," (Pet's Mem. of Law, Ex. D), despite having an opportunity to do so on direct appeal. *See Azzara v. United States*, Nos. 10-CV-8104, 02-CR-1446, 2011 WL 5025010, at *6 (S.D.N.Y. Oct. 20, 2011) ("Other claims presented here for the first time—such as Azzara's claim that trial counsel provided ineffective assistance of counsel by failing to investigate his mental health disorders and use of psychiatric medications—could have been brought on direct appeal."). This Court may therefore consider Petitioner's arguments regarding his mental health only if Petitioner has "show[n] cause for failing to raise the claim[s] at the appropriate time and prejudice from the alleged error." *Id.* (quoting *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993)) (internal quotation marks omitted). "Thus, absent a showing of cause and prejudice, those claims are too procedurally barred." *Id.* (citing *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010)) (internal quotation marks omitted).[5]

---

[5] Petitioner did not raise his mental health issues before Magistrate Judge Davison. Petitioner did, however, allege in his reply brief to Judge Davison that his incriminating statements were involuntary, because he was under the influence of narcotics when the police questioned him. Magistrate Judge Davison properly found this argument to be procedurally barred, since it had not been presented to the state courts, and otherwise concluded it was meritless. (R&R at 19 & n.14.)

12

Petitioner has made no effort to show cause for his failure to raise this issue previously. Moreover, Petitioner cannot establish prejudice—either in the sense that his failure to raise his mental health on appeal issues was prejudicial, such that he should be deemed not procedurally barred from raising the arguments now; or in the sense that trial counsel's failure to ascertain Petitioner's mental health issues deprived Petitioner of effective assistance of trial counsel. To be sure, an individual's mental health is a relevant consideration in evaluating whether the individual's statements were consensually given or otherwise voluntary. *See, e.g., Delesline v. Conway*, 755 F. Supp. 2d 487, 501–02 (S.D.N.Y. 2010) ("'The factors to be considered [in evaluating the voluntariness of a confession] include the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation.'" (quoting *United States v. Alvarado*, 882 F.2d 645, 649 (2d Cir. 1989)). But Petitioner has not presented any argument as to why his mental health issues—whatever they are—should be the determinative consideration. *See Linnen v. Poole*, 766 F. Supp. 2d 427, 450–51 (W.D.N.Y. 2011) (holding that confession was voluntary, despite petitioner's allegedly "emotionally unstable" state, because "he was in enough control of his mental faculties to make it reasonable . . . to conclude that he was able to voluntarily waive his rights and speak to [a detective]"). Furthermore, Petitioner has failed to establish any link between his mental health issues and the circumstances of his questioning, which link would be necessary to a showing of prejudice. *See King v. City of New York*, Nos. 99-CV-3669, 05-CV-3247, 2007 WL 959696, at *13 & n.15 (E.D.N.Y. Mar. 30, 2007) (holding, inter alia, that a § 1983 plaintiff could not rely on assertions of mental health problems to establish a coerced confession claim, because there was "no[] evidence linking his mental health to the circumstances attending his interrogation"). Accordingly, Petitioner's ineffective assistance of counsel claims are also denied.

## III. Conclusion

For the reasons stated above, the Court adopts the conclusions of the R&R and denies the instant petition. Accordingly, it is ORDERED that the R&R, dated May 26, 2011, is adopted in its entirety. It is further

ORDERED that the petition is DENIED. It is further

ORDERED that because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). It is further

ORDERED that the Clerk of the Court is respectfully directed to terminate the pending petition (Dkt. No. 1), and to close this case.

SO ORDERED.

Dated: White Plains, New York
January 11, 2013

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE